## SOUTHERN PACIFIC RAILROAD COMPANY v. UNITED STATES.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 142.　Argued January 24, 25, 1906.—Decided February 19, 1906.

*Southern Pacific Railroad v. United States, No. 1, ante,* p. 341, followed as to the power of the court to maintain this suit in equity and as to the validity of the acts of Congress of 1887 and 1896 for the adjustment of railroad land grants. *Held,* also that:

Lands which at the time a railroad grant attached by the filing and approval of the map of definite location were within the claimed but undetermined limits of a Mexican grant did not pass to the railroad company although within the place limits of its grant, and this notwithstanding the fact that by the final survey and patent they were excluded from the Mexican grant.

A survey of the Mexican grant made by the proper officers at the instance of the applicant and before the railroad grant attached included the disputed lands. The applicant did not repudiate the survey, but sought a patent based upon it. It was in legal effect his claim to the lands. The Government, not questioning the right to have such a survey at the time it was applied for and made, ordered a resurvey on the ground that the boundaries shown in the first survey were incorrect. The second survey was made after the railroad grant attached and excluded the lands. *Held,* that the lands were *sub judice* at the time the railroad grant attached and were not included within it.

THIS case, in which on February 28, 1901, the United States filed its bill in the Circuit Court for the Southern District of California, resembles the one immediately preceding, in that it was a suit to cancel certain patents erroneously issued to the Southern Pacific Railroad Company, and to quiet the title of the Government to the lands mentioned therein; to confirm the title of certain other lands erroneously patented to the company and by it conveyed to *bona fide* purchasers; and to obtain an accounting and recovery from the company of the value of the lands so conveyed to *bona fide* purchasers. By the decree the full relief asked, cancellation, confirmation and recovery was granted. The question presented is different in that the railroad company denies that the patents were erroneously issued. The lands were within the place limits of the railroad company's grant, but the plaintiff contends that they

were excluded from the grant because within the claimed and undetermined limits of a Mexican land grant.

In 1838 one Juan Bandini received from the Mexican gov ernment a grant of what is termed the Jurupa Ranch. After California was acquired under the treaty of Guadalupe Hidalgo, and on September 25, 1852, Bandini presented his petition to the commissioners appointed under the act of Congress of March 3, 1851, 9 Stat. 631, asking confirmation of his title, and on October 17, 1854, it was confirmed, the order of confirmation describing the boundaries of the rancho in substantially the language of the act of judicial possession.

An appeal was taken to the District Court of the United States for the Southern District of California, as authorized by the statute, which court, on April 5, 1861, sustained the action of the commissioners. The boundaries of the grant were thus described:

"The said boundaries being as follows: Commencing at the foot of a small hill, standing alone, at the canada which the Messrs. Yorba recognize as their boundary, on the further side of the river of Jurupa, which hill the Indians in their tongue call 'Pachappa,' which was taken for a landmark, placing on it certain stones on top of others; thence course westerly along the bank of the said river thirty thousand varas to the point of the same table land on which Mr. Bandini had established his house; and where the said river makes a bend, where a stake was driven for a landmark; thence northerly, fronting towards the mountains of Cucamonga, seven thousand varas, passing between the two springs of Guspar, ending at the first white sand bank which there is on said course towards Cucamonga; thence easterly the same thirty thousand varas to a small lone mountain on the left hand of the high road going from San Gabriel to San Bernardino, called by the Indians 'Catalmacay,' and which was designated as a landmark; thence southerly seven thousand varas to the point of beginning at the foot of the small hill called 'Pachappa,' which makes a corner east, west."

The confirmation was made in the name of Abel Stearns, a purchaser pending the proceedings, and substituted of record for the original petitioner. On January 14, 1869, the surveyor general of California, on application of the claimant and deposit by him of the estimated cost thereof, directed a survey of the rancho. This was made, and on February 26, 1872, the survey and field notes were filed in the office of the surveyor general of California and by him approved. On May 13, 1876, the Commissioner of the General Land Office at Washington directed a correction of some alleged errors in this survey. On appeal from this order the Secretary of the Interior, on February 21, 1877, ordered a resurvey. This was made, and on May 23, 1879, a patent was issued conforming to such resurvey. The lands in dispute are within the limits of the first but outside those of the second survey, and are not included in the patent.

On May 1, 1862, an appeal to this court was prayed and allowed in the District Court of California. On January, 8 1875, an order was here entered which, after stating that an appeal had been allowed by the District Court, as shown by an inspection of the certificate of the clerk of that court, recites:

"And whereas, in the present term of October, in the year of our Lord one thousand eight hundred and seventy-four, the said cause came on to be heard before the said Supreme Court, and it appearing that the said appellant has failed to have its cause filed and docketed in conformity to the rules of this court, it is now here ordered, adjudged and decreed by this court that this appeal from the District Court of the United States for the District of California be, and the same is hereby, docketed and dismissed."

Upon these facts a decree in favor of the plaintiff was entered by the Circuit Court, June 15, 1903 (123 Fed. Rep. 1007), which was affirmed by the Circuit Court of Appeals on October 17, 1904 (133 Fed. Rep. 662), and thereupon this appeal was taken.

*Mr. Maxwell Evarts* for appellant.

*Mr. Joseph H. Call*, special assistant to the Attorney General, for the United States.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

The single question is whether these lands were between the dates of the two surveys *sub judice*, and therefore not passing under the grant to the railroad company. The map of definite location was filed and approved in 1874, and at that time, which was between the dates of the two surveys, the grant took effect. The description of the lands in the grant and in the decree of confirmation was not in the language of the United States land legislation by section, township and range, nor was it such that without a survey the exact boundaries could be determined. No one could say from reading this description whether the true north boundary was shown by the first or the second survey. The regular land surveys made by the Government establishing section, township and range lines would not locate the boundaries of the grant nor would they identify either of those lines with any particular boundary. There was that generality of description which required a special survey to locate the grant. It is said that the patentee never claimed the land north of the boundary line established by the second survey, and therefore that it was in no just sense *sub judice*. But the boundaries being uncertain he applied to the department authorized by Congress to determine them. It acted upon his application and by its survey located the boundaries. He made no challenge of its action, but so far as the record shows was content therewith. While a new survey was subsequently ordered, it was not at his instance. So, at least until the first survey was set aside, it was the measure of his claim, and the lands within the boundaries established by it were *sub judice*. No affirmative declaration that he insisted

upon his right to them was essential to make them a part of his claim.

But the special contention of the appellants is that the first survey was without any authority of law, because the statute provides that upon final confirmation of the claim a survey may be ordered, and it is insisted that there was no final confirmation until the order made by this court in 1875; that although the confirmation by the District Court was in 1861, yet an appeal was allowed which transferred the case to this court and held the question of confirmation in abeyance until the order here made in 1875.   The statute (sec. 13) provides:

"   .   .   .   And for all claims finally confirmed by the said commissioners, or by the said District or Supreme Court, a patent shall issue to the claimant upon his presenting to the General Land Office an authentic certificate of such confirmation, and a plat or survey of the said land, duly certified and approved by the surveyor general of California, whose duty it shall be to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats of the same."

Hence it is contended that the entire proceedings under the first survey were void and may be put out of consideration in determining whether the lands were *sub judice*.   But this ignores the fact that anterior to the first survey the United States had practically abandoned its appeal from the order of the District Court.   It had for ten years failed to file any transcript in this court and the petitioner had been entitled to the formal entry of docket and dismissal which he obtained in 1875, an entry implying an abandoned appeal and made to place that fact upon record.   The Government, which was the party interested against the petitioner, and the party taking the appeal, did not, when the application was made in 1869 to the surveyor general of California, question the right to a survey.   It did not suggest that there had been no final order of confirmation nor has it at any time raised any question of the right to that survey, and the Land Department ordered

the second only upon a doubt of the accuracy of the first. It does not lie within the mouth of a third party to say that the Government had a right to appeal, could have insisted on that right, and could have objected to the first survey on the ground of a failure to obtain a final order of confirmation. It is enough that the Government recognized that it had abandoned its appeal, and was willing that proceedings should be taken looking to survey and patent. Nor were the proceedings so absolutely void that it can be said that no claim was pending. The surveyor general was the official of the Government placed in charge of surveys, who on application was to determine whether the conditions had arisen which justified him in acting. If he decided erroneously his action could be set aside on review, but it was not a nullity. Even between individuals, if one brings a suit in a Federal court to quiet his title to a tract of land and obtains a decree in accordance with his bill, and on appeal this court sets aside the decree and orders the suit to be dismissed for lack of proper allegations in respect to diverse citizenship, while it may be that the proceedings are ineffectual to determine the title, yet can it be said that no suit was pending, no claim was made? Put the question in another aspect; suppose no challenge of the first survey had been made and the Land Department, acting on that survey, had caused a patent to be issued, could the Government obtain a decree setting it aside upon that showing alone and without a disclosure of equities? In *Williams* v. *United States*, 138 U. S. 514, and *Germania Iron Company* v. *United States*, 165 U. S. 379, something more than premature action in certificate and patent was shown—something which presented an equity entitling the United States to maintain its suit for cancellation.

Another matter; at the time the map of definite location was filed and approved, this first survey had been made and approved by the surveyor general of California, and by that survey the lands in dispute were included within the Mexican grant. The railroad company, therefore, took title to its land grant with this fact apparent on the records of the Land De-

partment.   In an early case in this court, *Kansas Pacific Railway Company* v. *Dunmeyer*, 113 U. S. 629, in which the question of the relative rights of railroads to granted lands and individuals claiming rights to separate tracts within the place limits, was presented, we said (p. 641):

"It is not conceivable that Congress intended to place these parties as contestants for the land, with the right in each to require proof from the other of complete performance of its obligation.   Least of all is it to be supposed that it was intended to raise up, in antagonism to all the actual settlers on the soil, whom it had invited to its occupation, this great corporation, with an interest to defeat their claims, and to come between them and the Government as to the performance of their obligations.

"The reasonable purpose of the Government undoubtedly is that which is expressed, namely, while we are giving liberally to the railroad company, we do not give any lands we have already sold, or to which, according to our laws, we have permitted a preëmption or homestead right to attach.   No right to such land passes by this grant."

And this proposition has been repeatedly reaffirmed in later cases.   *Hastings & Dakota Railroad Company* v. *Whitney*, 132 U. S. 357; *Sioux City &c. Land Company* v. *Griffey*, 143 U. S. 32; *Whitney* v. *Taylor*, 158 U. S. 85.

One thing more: it appears from a stipulation of counsel that within the indemnity limits of the grant to the Southern Pacific Railroad there remain more than fifty thousand acres of surveyed public lands for which there has been no selection or application to select by the company.   So that there is no such equity in favor of the company as was suggested in the case of *United States* v. *Winona &c. Railroad Company*, 165 U. S. 463, 482.

The decree of the Court of Appeals is

*Affirmed.*