[No. 13475.  In Bank. — August 4, 1890.]

| 85 | 313 |
| 117 | 603 |
| 85 | 313 |
| 141 | 456 |
| 141 | 457 |

GEORGE W. ADAIR, APPELLANT, v. FRANK M. WHITE ET AL., RESPONDENTS.

MEXICAN GRANT — CONCLUSIVENESS OF PATENT — HOMESTEAD ENTRY. — A patent to land, issued by the United States upon a confirmed Mexican grant, is conclusive upon the United States government and all claiming under it after the date of its issue, and precludes any subsequent homestead entry of the same land under an act of Congress.

BOUNDARIES — DESCRIPTION IN PATENT — MONUMENTS. — In determining the boundaries of a patent as applied to the tract of land described in it, courses and distances must yield to natural objects or monuments called for.

ID. — SURVEY OF PUBLIC LAND AFTER PATENT. — A survey of public land, made many years after a patent has issued to certain lands under a prior survey, confirming a Mexican grant, is entitled to but little considera-

tion, and cannot disturb or damage the boundary lines of the lands which have gone into the patent, and which are conclusive between the holder under the patent and the United States government.

APPEAL from a judgment of the Superior Court of Ventura County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. H. Wilde,* for Appellant.

*Blackstock & Shepherd,* for Respondents.

THORNTON, J. — Action of ejectment for a parcel of land in Ventura County, in which judgment passed for the defendants. Plaintiff moved for a new trial, which was denied, and he appeals from the judgment, and the order denying his motion.

The plaintiff claims under a patent of the United States, issued on a confirmed Mexican grant of the rancho Santa Paula y Saticoy. The patent was issued by the United States on the twenty-second day of April, 1872. With the grantee of this patent the plaintiff connects himself by proper mesne conveyances, executed before the commencement of this action.

The main point to be determined herein turns upon the location of the southern boundary line of the rancho above named, which will be herein called the Santa Paula. It is claimed by the plaintiff that the strip of land in controversy herein, lying along the southern boundary of the Santa Paula, of which the defendants were in possession when the action was brought, is within the lines of the patent above mentioned, issued in 1872, while the defendants contend that it is not included within such lines. As to this point testimony was introduced by the parties, and this court is called on to determine whether, within the rules laid down in its decisions, there is an insufficiency of the evidence to justify the decision of the court below, which was adverse

to the contention of plaintiff.  We proceed to the con-
sideration of this point.

The patent herein, having been issued upon a con-
firmed Mexican grant, is conclusive upon the United
States government and all claiming under it.  Such
is the meaning of the act of Congress of March 3, 1851,
entitled " An act to ascertain and settle the private land
claims in the state of California." (See section 15 of the
act.)  This interpretation has always been given to sec-
tion 15 of the above-cited act.  (See *Waterman* v. *Smith*,
13 Cal. 373; *Moore* v. *Wilkinson*, 13 Cal. 478.)

The question of the conclusiveness of the patent upon
all except third persons should be regarded as conclu-
sively settled by the cases above cited, which have been
approved and followed in many cased decided by this
court and the supreme court of the United States.
There is no case to the contrary.  The defendants
claimed under a homestead entry made under an act of
Congress.  They certainly can only be regarded as
claiming under the United States, and as the patent is
conclusive on the United States, and was so from the
date of its issue, it must be held to be conclusive on the
defendants.

The southern line of the patent of the Santa Paula is
thus described in the field-notes of the patent (both
patent and field-notes were offered in evidence, and are
set forth in the transcript) as commencing at the station
mentioned, S. P. 13, and running "thence south $42\frac{1}{4}$
east, at 30 links enters bed of Santa Clara River, course
southwest, at 4 chains intersects offset of township line
in township 3 north, range 21 west, 39.50 chains east of
corner of sections 10, 11, 14, and 15, at 4 chains and 50
links crosses river and ascends; thence along westerly
slope of abrupt hill called Lomas de Santa Paula, 492
chains, to stake marked S. P. 14, station at the most
southern point of above-named hills, known as the
Punta de la Loma."

It will be observed that this line terminates at the most southern point of the hills called the Lomas de Santa Paula, which point is known as the Punta de la Loma. This is a natural object or monument, and the station S. P. 14 was there fixed and established by the calls of the patent.

If this point can be found, it is only necessary to run a line from S. P. 13 to S. P. 14 to fix the southern boundary line. It may be that the length of this line, as stated in the field-notes, is not accurate. It is stated in the notes to be 492 chains in length. If it should turn out to be actually longer or shorter than 492 chains, this is immaterial in fixing the line. The line must, according to the calls of the patent, run to this point, whatever be its length,—whether the line exceed in length 492 chains, or be less than 492 chains. The same may be said of the course. Any variation in the course should be disregarded. The variation, if any, as the testimony shows, can only be trifling; whether varying in any wise, or not, that course must be pursued which will bring the line to the natural object, the Punta de Loma. The above is in accord with the well-settled rule that in applying a conveyance to the tract of land described in it, course and distance must yield to natural objects or monuments called for. Such monuments are more certain and less liable to mistake or error than course and distance, and therefore monuments, as more certain, prevail over course and distance, partaking more or less of uncertainty.

The plaintiff called a surveyor, one George C. Power, who was admitted by the counsel for defendants to be pre-eminently qualified as a surveyor. Power located the southern line of the patent of Santa Paula in conformity to its calls. A plat of the survey made by Power is contained in the record, as well as a topographical map of the Punta de la Loma. The southern line, according to the testimony of this witness, includes within

the lines of the patent the land in possession of the defendants, sued for in this action.

The witness first proceeded to fix the location of the Punta de Loma. He states it to be "*a well-known, recognized land-mark.*" The Punta de Loma was fixed by Power, in accordance with the calls of the patent, "as the most southern point of the hills," styled in the field-notes of the patent the Lomas de Santa Paula. (See extract from field-notes of patent, given above.)

From the point Punta de Loma so fixed, he (Power) ran other lines, to test the accuracy of its location. In running these test lines he used the *data* furnished by the field-notes contained in the patent of the Santa Paula. He ran a line in a northeasterly direction from the Punta de Loma, and though he found some discrepancies in courses and distances from the courses and distances stated in the patent, still his southern line was substantially in accordance with the southerly line of the patent, or as near such south line (the witness said) as could be determined from the evidence given him.

The plat and field-notes of the final survey of the rancho Santa Clara del Norte, which adjoins the Santa Paula for some distance on the south, were offered in evidence. The final survey of the Santa Clara del Norte and the final survey of the Santa Paula were made by the same surveyor, J. E. Terrell, and in the same month, December, 1860.

The above final surveys have a common line, which is described in the latter portion of the extract of the field-notes of the Santa Clara del Norte, as follows: "Thence [from station S. C. No. 4, near old adobe] north 37¾ east, 455.63 chains, to large redwood post, marked S. C. No. 3, at foot of hill called Loma del Arroyo Colorado; thence running toward the Punta de la Loma south 77½ west, along southern slope of abrupt hills, 319 chains, to stake marked S. P. 14, a corner of rancho Santa Paula y Saticoy on point of hill known

as the Punta del Loma, marked stake S. C. No. 4, and run along boundary of rancho Santa Paula y Saticoy through sandy bottom."

It will thus be seen that S. C. 4 in the final survey of the Santa Clara del Norte, and S. P. 14 in the patented survey of the Santa Paula, are the same.

The corner of the survey of the Santa Clara del Norte No. 3, Power testifies, is positively located, and was in evidence when he gave his testimony. He states that he started from that point, S. C. 3, and ran a transverse line around to the Punta del Loma, and calculated the course and distance, and it measured 324.30 chains; that it should measure by the patent 319 chains south, 77½ west. He further says that by following the course and distance of the patent it would bring the point a trifle north of the point he had located at the south point of the Punta del Loma, but it would be on the same ridge a little farther north of the point he had located, which is at the most southerly point of the hill.

The same observations made above as to the prevalence of natural objects over course and distance apply here. The line should be run to the natural object or monument, regardless of the discrepancies of course and distance, and for the reason above stated. So run, the line should be run to S. P. 14, or the Punta del Loma, it being apparent, from the field-notes of the Santa Clara del Norte, that S. P. 14 and S. C. 4 are identical as regards location.

The same witness further testifies that he next went up into the Santa Paula Cañon, some three miles, to a well-defined point then existing there, and acknowledged as the common corner of the ex-Mission and the Santa Paula y Saticoy ranchos, and ran down, according to the patent, to S. P. 13 of the Santa Paula patented survey, which was thus located as on the plat made by witness of the land in dispute. The south line of the plat is shaded blue. This blue line the witness testifies, *is the*

*patent line by course and distance, as measured from the Punta del Loma.*

This blue line, Power states, is the southern line of the survey of the Santa Paula, which went into the patent, and within this patented line is included the land sued for in this action.

Another and independent survey was made of this southern line of the Santa Paula by one J. A. Barry, a surveyor. He was called as a witness. In his testimony he agrees with the witness (Power) as to the location of the Punta del Loma, and says it is a well-known, visible landmark. He ran this southern line in accordance with the calls of the patent, and states that as so run it includes the lands in possession of the defendants, and in controversy in this action.

The principal witness on the point of the location of the southern line of the Santa Paula called by defendants was a surveyor named Stow. He had been county surveyor of Ventura County for twenty-six years. He testified that he had occasion to attempt to retrace the south line of the Santa Paula rancho; that this line is one of the Terrell surveys, and it is in the same condition that all the rest of them are,— generally all wrong. He then proceeded to explain, and said that a good many years ago there was some disagreement about the location of a line running from what is known as Punta de la Loma; that we went there and endeavored to locate from the *data* that we had, and other ways, the corner of the Punta de la Loma, which we found out we could not locate, at least satisfactorily, at the time, by running the various lines running into it in different directions according as they were on the Terrell survey. Starting at other known corners, and running to the Punta de la Loma, there are no two lines that would come out in the same place. He further said that the patent survey of the rancho Santa Paula y Saticoy, to endeavor to follow

the exact field-notes of the patent, it is radically wrong, and cannot be done."

It is evident, from the testimony of Stow, that he attempted to ascertain the southern line of the rancho Santa Paula by course and distance, as called for in the field-notes of the patent. It is not surprising that he could not so locate this line. It rarely happens that the lines of one survey, run by course and distance, are found to coincide with the lines so run of a subsequent survey. It is easily accounted for by inequalities of the ground on which the lines are run, by minute difference in the length of the chain used, and sometimes by trifling changes in course. This is more apt to occur where the lines are long. In the case before us the southern line is 492 chains in length. In consequence of the frequent occurrence of such discrepancies between different surveys, the rule that course and distance must yield to monuments is established.

Stow states in his testimony that he was reasonably familiar with the Santa Paula hills, terminating at the Punta de la Loma; that he had been over it at different times as a surveyor; that the topographical map of it (this map is in the record) made by Power shows about the topography of what is known as the Punta de la Loma; that it (the punta) is a permanent natural landmark, and that it is the most southerly point of the Punta de la Loma.

This Punta de la Loma, or Punta del Loma (for it is called by both of these names), is a controlling call in the southern line of the Santa Paula, as set forth in the patent and field-notes of the ranch, is a permanent natural monument, and fixes the location of the line in dispute. By Stow's statement as to the Punta, he shows that Power's location of the line is correct, or so nearly correct as to clearly demonstrate that the court erred in fixing the southern line of the Santa Paula so as to exclude the land herein sued for. It may be conceded that

the southern line, as fixed by Power, is not identical with the southern line of the patent, but it suffices to show that the court below went wrong in coming to the conclusion that the land sued for was entirely outside of the patented southern line. At any rate, it shows that the greater part of the land in suit lies within the lines of the patent, which part plaintiff is entitled to recover.

As to Norway's survey, made about eighteen years after the patent of Santa Paula was issued, it is entitled to but little consideration. Norway was sent to survey the land remaining as public land after the survey of the granted lands had been made, and it would be highly unjust to allow such a survey to disturb or damage the lines of the lands which had gone into the patent. A holder of land under a patented Mexican grant would never be safe in his holding, if his survey, which had gone into a patent, declared to be conclusive between him and the United States government, could thus be disturbed.

We are of opinion that the evidence was not sufficient to justify the decision of the court in this case, and therefore the judgment and order should be reversed, and the cause remanded for a new trial.

We find no other error in the record for which a reversal should be ordered, but for the error pointed out above, the judgment must be reversed, and the cause remanded for a new trial, in conformity with the views expressed in this opinion.

So ordered.

Fox, J., SHARPSTEIN, J., WORKS, J., and McFARLAND, J., concurred.