## ADAIR v. WHITE et al.

## No. 19,117; October 5, 1893.

### 34 Pac. 338.

**Boundaries.**—On the Question of the Location of a Point called for in a patent and survey, the court may consider the field-notes and description in the patent of an adjoining tract, the boundaries of the two tracts being coincident for a distance of several miles, and both having been surveyed by the same surveyor at about the same time.

**Boundaries—Appeal.**—On the Question of the Proper Location of a point called for in a survey and patent, a finding by the court on conflicting evidence will not be disturbed on appeal.

APPEAL from Superior Court, Ventura County; W. B. Cope, Judge.

Action of ejectment by George M. Adair against Frank W. White and others. From a judgment for defendants, plaintiff appeals. Affirmed.

W. H. Wilde for appellant; Blackstock & Shepherd for respondents.

HARRISON, J.—Ejectment for certain lands claimed to be a part of the Rancho Santa Paula y Saticoy, in Ventura county. The controlling question in the case is the location of the southerly line of the rancho. This line is set forth in the patent as follows: After leaving station S. P. 13, "thence S. 42, ¼ E., at 30 links enters bed of Santa Clara river, course S. W.; at 4 chains, intersects offset of township line in township 3 N., range 21 W., 39.50 chains east of corner to sections 10, 11, 14, and 15; at four chains and fifty links crosses river, and ascends; thence, along westerly slope of abrupt hills called 'Lomas de Santa Paula,' 492 chains, to stake marked 'S. P. 14' station, at the most southern point of above-named hills, known as the 'Punta de la Loma.'" When the case was here upon the former appeal (Adair v. White, 85 Cal. 316, 24 Pac. 663) it was said: "It will be observed that this line terminates at the most southern point of the hills called the 'Lomas de Santa Paula,' which point is known as the 'Punta

de la Loma.' This is the natural object or monument, and the station S. P. 14 was there fixed and established by the calls of the patent. If this point can be found, it is only necessary to run a line from S. P. 13 to S. P. 14 to fix the southern boundary''; and the case was remanded for a new trial in accordance with this principle. When the cause came on again for trial in the court below, the greater portion of the testimony was directed to establishing the location of the point upon the Punta de la Loma at which S. P. 14 had been placed, and from the evidence before it the court found that this point was so located that a line drawn from it to S. P. 13 lay to the north of the lands occupied by the defendants, and thereupon rendered judgment in their favor. The position of station S. P. 14, as well as the significance of ''Punta de la Loma,'' were questions of fact to be determined by the court from the evidence before it. There was a sharp conflict of evidence upon both of these questions, and, under the well-established rule, the finding of the trial court thereon must be held conclusive. It is only where there is no substantial evidence in support of a finding that this court can disregard the finding of the trial court; and after a careful examination of the record herein we are unable to say that the evidence before that court did not authorize it to make the findings which it has made upon both of these questions of fact. The stake that had been placed at the station had disappeared, and one of the objects at the trial was to re-establish this monument. Several surveyors were called as witnesses for the respective parties for the purpose of establishing the location of S. P. 14, and the conflict between their testimony arises chiefly from the construction given to the field-notes and calls of the patent; the plaintiff contending that these notes call for the southernmost point of the Punta, or extremity of the hills, while the defendants contend that the Punta is itself designated as the southern extremity of the Lomas, or hills, and that the question to be determined was the position on the Punta at which the station S. P. 14 was originally placed. In his field-notes of the survey, which were finally approved for the issuance of the patent, the surveyor describes the course from S. P. 13 as running in a direct line ''along western slope of abrupt hills called 'Lomas de Santa Paula,' 492 chains, and to the most southern point of above-named hills known as the 'Punta

de Loma,' " and states that he there "set stake marked 'S. P. 14' "; and, in the patent, the boundary of the ranch upon this course is described as "along westerly slope of abrupt hills called 'Lomas de Santa Paula,' 492 chains, to stake marked 'S. P. 14' station, at the most southern point of above-named hills, known as the 'Punta de Loma.' " It thus appears that the extremity of this course, and the station at which the stake marked "S. P. 14" was set, is "the most southern point of above-named hills, known as the 'Punta de la Loma,' " and the literal construction of the language used in its description makes "the above-named hills" include the entire Lomas de Santa Paula, and also makes the "Punta de la Loma" synonymous with the most southern extremity of the entire Lomas, so that the stake marked "S. P. 14" would have been set at the Punta of the Lomas, and not at the southernmost point of the Punta. The topography of the country along which this line extends is confirmatory of this construction. The Lomas de Santa Paula is a range of hills lying to the southeast of the Santa Clara river and terminating where they enter the plain of the Santa Clara valley in a prominent headland called the "Punta de la Loma." The hills themselves are abrupt on their northerly or northwesterly side, with a gentle slope on their southerly side. This Punta or southern extremity of the hills has a face of about two hundred feet, is oval in shape, and abrupt toward the north near the river, but with a gradual slope to the south and west. As the course itself runs along the axis of the hills, or nearly so—the general trend of the hills from the Punta being about north, fifty degrees east—it was natural for the surveyor to terminate the course at the extremity of the hills; and as he designated the slope along which the course ran as the westerly, rather than the northwesterly, slope of the hills, he would also naturally designate the extremity of the hills to which he carried the course as the southernmost point thereof. His subsequent designation of that extremity as the "Punta de la Loma" was only for the purpose of adding another description to the one which he had already given, and is to be taken as synonymous with it. The court was therefore called upon to ascertain in what point of the Punta the station S. P. 14 had been placed, and was not required to place it at the southernmost point of the

Punta itself. For this purpose it was proper to receive in evidence and consider the field-notes and description in the patent for the adjoining rancho, Santa Clara del Norte. The boundaries of these two ranches are coincident for a distance of several miles, and were surveyed by the same surveyor at about the same time, in December, 1860; and it appears from the field-notes of the Rancho Santa Clara del Norte that the Santa Paula Rancho was first surveyed, the fifteenth course of the description of the Santa Clara Rancho reading: Thence "to stake marked 'S. P. 14,' a corner of Rancho Santa Paula y. Saticoy, on point of hill known as the 'Punta del Loma,' mark stake 'S. C. N. 4,' and run along boundary of Rancho Santa Paula y Saticoy through sandy bottom." As the station S. C. N. 4 in this rancho was identical with S. P. 14 of the Santa Paula Rancho, it was competent to show the location of the S. P. 14 by re-establishing S. C. N. 4, in accordance with the calls and monuments referred to in the patent for this rancho. If this station could be thus re-established, it would fix the place "on point of hill known as the 'Punta del Loma' " which had been designated as station "S. P. 14," and where the stake had been set. That the evidence introduced for this purpose tended to locate S. C. N. 4 at a point from which a line drawn to S. P. 13 would exclude the land of the defendants is not seriously controverted, and the finding of the court to that effect must be accepted as determinative of the proposition. Certain exceptions were taken to the rulings of the court in admitting evidence, but none of them are of such a character as to have affected the conclusion reached by the court. The judgment and order are affirmed.

We concur: Paterson, J.; McFarland, J.