[Sac. No. 863.   Department One. — September 25, 1901.]

ALLEEN HARRINGTON, Appellant, v. JOHN BAPTIST BOEHMER et al., Respondents.

PUBLIC LANDS — UNITED STATES SURVEY — LOCATION OF TOWNSHIP — DE-TERMINATION BY MONUMENTS IN FIELD. — The location of a township upon the public land of the United States is where the government surveyor has actually lined it out, and is to be determined by the monuments placed by him in the field.

ID. — CONTROL OF PLAT BY FIELD-NOTES — CORRECTION OF PLAT. — In case of discrepancy between the field-notes and the plat, the plat must give way to the field-notes; and the land department may properly correct the plat so as to conform to the field-notes. The plat as corrected supersedes the original.

ID. — EJECTMENT — FAILURE OF PLAINTIFF'S TITLE — SWAMP-LAND PATENT — TRACT NOT INCLUDED IN GOVERNMENT SURVEY. — A plaintiff in ejectment must fail, where he claims under a swamp-land patent from the state, which confers no title, where the field-notes of the government survey of the township and the corrected plat thereof show that there is no such tract of land as that described in the

patent; and it is immaterial that such tract appears upon the original plat of the survey.

ID. — EVIDENCE — LOCATION OF RIVER AS BOUNDARY — CHANGE NOT PROVED — HARMLESS RULING. — Where the Sacramento River formed a boundary of the land claimed by the plaintiff, and the case was tried and findings made on the theory that there had been no change in the location of the river since 1850, a change thereof will not be presumed. The refusal to allow a witness for plaintiff to prove its location since 1850 will be deemed harmless, where no offer appears to prove a change of location by the witness.

ID. — PROOF OF FIELD-NOTES — CERTIFIED COPY — HARMLESS EXCLUSION OF ORIGINAL. — A certified copy of the field-notes of the government survey is competent evidence thereof, and if placed in evidence by the defendants, the exclusion of the original notes, when offered in rebuttal, was harmless, where no discrepancy between them was made to appear.

APPEAL from a judgment of the Superior Court of Colusa County and from an order denying a new trial. H. M. Albery, Judge.

The facts are stated in the opinion.

John T. Harrington, for Appellant.

Dyas & Howard, for Respondents.

GRAY, C. — This action was brought to recover possession of a tract of land alleged to be situated in Colusa County, and described as lot 3 of section 24, in township 17 north, range 2 west, Mount Diablo meridian, and containing 54 acres, according to the United States plat thereof. The defendants had judgment, and plaintiff appeals from said judgment and from an order denying her motion for a new trial.

The plaintiff claims title to the premises in dispute, as swamp and overflowed land, under a patent from the state of California, dated June 20, 1899. The defendants claim that the land, of which they are in possession, and that plaintiff seeks the possession of, is in fact a part of the south half of the south half of section 19, in township 17 north, range 1 west, and that the Central Pacific Railroad Company is the patentee from the United States government of said portion of section 19, which is more particularly described as the south half of the southeast quarter, lot 4 of the southwest quarter, and the southeast quarter of the southwest quarter of said section 19. Defendants claim under the title of the railroad com-

pany.   To establish her title, the plaintiff introduced in evidence a patent from the state, purporting to convey land to her, described as in her complaint.   She also introduced in evidence a plat purporting to be a plat of township 17 north, range 2 west, approved November 9, 1867.   This plat was amended by the United States land department a year and some months after its approval, to make it correspond to the field-notes.   By the plat before its amendment, it appeared that the Sacramento River ran through section 24 from north to south, and that 155 acres of said section lay on the east side of said river and bordering on the east line of said township, which township line was at the same time the west line of section 19, in the adjoining township 17 north, range 1 west. Said 155 acres of land was divided into three lots, numbered from north to south, 1, 2, and 3.   Said lot 3, as it appears on said plat, embraces the east 54 acres of the south half of the southeast quarter of said section 24, and is bounded on the west by the Sacramento River and on the east by said township line.   By the correction of the plat, the area of said section 24 lying east of the Sacramento River was reduced from 155 acres to about 42 acres, and this area was divided, according to the system of government surveys, into lots 1 and 2, consisting of 19 and 23 acres, respectively, thus eliminating lot 3 (the one involved in this suit) from the plat.   The plat as corrected was placed in evidence, as was also the plat of township 17 north, range 1 west.   It appears from the plats that the Sacramento River, in its general course, runs along the line between the two townships named, meandering across and intersecting the same at three different points.   The western part of the township in range 2 west is covered by various Mexican grants, which are bounded on the east by the Sacramento River, and it so happens that only that part of the said township line on the east side of the Sacramento River was run in the field, and this part of the township line was run in connection with and as part of the survey of the township in range 1 west.   The north and south lines of said section 24 were not run in the field, nor were any of the boundaries of the said lot 3, as indicated on the first plat of township 17 north, range 2 west.   But the west boundary of section 19, township 17 north, range 1 west, is the eastern boundary of section 24, township 17 north, range 2 west.   The field-notes as well as the plat of township 17 north, range 1 west, corre-

sponding to said notes, show clearly that the original plat of township 17 north, range 2 west, was erroneous. The corrected plat corresponds with the field-notes. Of course, where there is a discrepancy between field-notes and a plat, the latter being made from the former, and the former being the better evidence as to where the line was run in the field, the plat must give way to the field-notes. (*Whiting* v. *Gardner*, 80 Cal. 78.) The question in all cases similar to this is, Where were the lines run in the field by the government surveyor? A government township lies just where the government surveyor lines it out on the face of the earth. These lines are to be determined by the monuments in the field. The field-notes show that the north line of said section 19 was run from the northeast corner thereof a distance of 69.19 chains to the west, and terminated at the Sacramento River, and that the south line of said section was in length 77.50 chains, with its western terminus "the bank of the Sacramento River." The eastern bank of the Sacramento River is also meandered for a distance near the southwest corner of said section, as well as for a distance near the northwest corner thereof, as the western boundary of the section. The natural monument, therefore, by which to fix the township line and the western boundary of said section 19, and at the same time the eastern line of said section 24, was the bank of the Sacramento River, according to the undisputed field-notes of the government survey. These field-notes give the land in controversy to the defendants, and show that there is no such land as that described in the complaint and in the patent from the state to plaintiff. It is not contended that there had been any change in the channel or bank of the Sacramento River, but, on the contrary, the appellant, as appears by her reply brief, contends that there had been no change in the river at that point.

It is at all times proper for the land department to correct a government plat to correspond to the government field-notes, when such notes show that the plat delineates land where there is no land, according to the field-notes. Of course, the plat as corrected superseded the original, and it would be strange indeed if parties could ignore this correction, and base a title on the mistake of a map-maker, thirty years after such mistake had been corrected on the face of the record. The plaintiff failed to establish title to the land described in her complaint, because the evidence shows that there is no such tract of land

as that described, and the finding against her title was therefore proper. According to the corrected plat, there is a small triangular piece of land between the river and the land of defendant, comprising about four or five acres, which seems to lie in said section 24, and within the boundaries of the said lot 3, claimed by plaintiff, as those boundaries were marked on the original plat; but on the corrected plat this small piece of land is a part of lot 2, in said section 24. As to this, however, plaintiff makes no claim, and there is no controversy concerning it.

The appellant called as a witness W. S. Green, and asked him as to where the river was from 1850, "with reference to its *locus* at this time." The witness was not permitted to testify as to the matter, and this is urged as error. It does not appear from the transcript whether the appellant desired to show by the witness that there had been a change in the river, or the contrary, but, in the reply brief, appellant, in speaking of Green's knowledge, says: "He knew the location of the river at that point before the swamp-land grant to the state was born, and knew that there had since been no change in the location." The case seems to have been tried on the theory of no change in the river, and the findings proceed upon the same theory; and in the absence of any evidence at all on the question (and there seems to have been none), it would not be presumed that there had been any change in the river that would affect the case. The appellant was not injured by the exclusion of the evidence.

The record shows that a certified copy of the field-notes pertinent to the case were put in evidence by the respondent, and a copy of these field-notes, so far as they relate to the meanders of the river, appears in the record, on the face of a plat marked "Defendants' exhibit 9." The appellant, in rebuttal, offered in evidence the originals of these field-notes; but no suggestion was made that there was anything wrong with the certified copy already in evidence, or that the originals would in any way change or affect any aspect of the case; and as the certified copy was competent evidence, we cannot see how the appellant could have been hurt in any way by the exclusion of the original.

Several other alleged errors of the court in ruling upon the admission of evidence are enumerated by appellant, but no argument is presented in support of the points thus made, and

for that reason we do not deem it necessary to notice them in detail. It is deemed sufficient to say that the undisputed field-notes supported the contention of respondents, and it is difficult to see how any of the rulings complained of could have affected the findings or judgment in the case.

We advise that the judgment and order be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 6th of October, 1901:—

BEATTY, C. J.—I dissent from the order denying a rehearing. The demanded premises are bounded on the east by the township line, and on the west by the Sacramento River. The size of the tract depends upon the distance apart of these two boundaries. According to the original plat of the township, the distance was sufficient to give a tract of fifty-four acres (lot 3), but the amended plat, corrected by the field-notes, reduced that part of lot 3 between the river and the township line to an area of four or five acres, according to the opinion of the Commissioner. I think its area is shown to be somewhat greater, but conceding that it was not more than five acres, the evidence clearly showed, and without conflict, that it belonged to plaintiff, and that defendants were occupying it without right. The lands to which they have title all lie east of the township line. The plaintiff owns all west of the township line, to the river bank, and whether that is much or little, she was entitled to recover it in this action, with her costs. I do not see how it can be said that there is no dispute about this small tract. The principal dispute, of course, was as to the location of the township line with reference to the river bank,—the plaintiff claiming according to the original plat,—but the denial of her claim in that respect was no reason for depriving her of the small area left within her boundaries by the amended plat. The tract—whether large or small—between those boundaries was the thing in dispute.