[L. A. No. 10522. In Bank.—December 23, 1930.]

THORNHILL FRANCIS BROOME, Plaintiff and Appellant, v. CHARLES LANTZ, Defendant and Appellant.

Charles F. Blackstock and Drapeau, Orr & Gardner for Defendant and Appellant.

Winslow P. Hyatt and Edward Fitzpatrick for Plaintiff and Appellant.

RICHARDS, J.—There are two appeals herein, one by the defendant from that portion of the judgment which is in the plaintiff's favor, and one by the plaintiff from that portion thereof in the defendant's favor. Our main consideration will be given to the first of the foregoing appeals. The action is one to quiet title to certain portions of the Guadalasca Rancho, situate in the county of Ventura, to which the plaintiff, as the owner of the larger portion of said rancho, also claims title, the complaint being in the usual form employed in such actions. There are two separate parcels of land described in the complaint. The first of these, and the one awarded by the judgment to the plaintiff, lies along the southeasterly line of said rancho, and if confirmed to plaintiff will have the effect of defining the southeastern boundary of the plaintiff's property as extending throughout the entire length thereof to the ocean. The other piece or parcel of land lies along the most easterly line of said rancho and with it we shall, if necessary, deal later. In the year 1836 Mariano Chico, Mexican governor of Alta California, upon the petition of Isabel Yorba described as a widow with four adopted children, granted to her the rancho then known as "Guadalasca", with no other description thereof than that supplied by a map which accompanied her petition. In this first grant there was expressly excepted therefrom a certain considerable tract of land which the Mission of San Buenaventura was then using for the pasturage of the Mission cattle. A year later, it being made to appear that the Mission had ceased to use this latter tract of land, another grant was issued by Governor Juan B. Alvarado to Isabel Yorba, which included these latter lands in the Rancho Guadalasca. The maps

accompanying each of these grants depict the granted lands as extending on their southeastern side to the ocean and as being bounded on that side by the coast and sierra (costa y sierra); the "costa" thus referred to being, evidently, that portion of said boundary which then consisted and still consists of a sandy beach extending for a considerable distance along the seashore, and the "sierra" being a steep bluff which at the southerly end of said beach rises abruptly from the waters of the ocean to the height of several hundred feet and extends along the remainder of said depicted boundary line as shown upon said maps. In the year 1852, the Mexican war having in the meantime been fought and having resulted in the acquisition of Alta California by the government of the United States by conquest, and also by the terms of the treaty of Guadalupe Hidalgo [9 Stats. at Large, 922]; and the said government having by act of Congress of March 3, 1851 [9 Stats. at Large, 631] created a commission "to ascertain and settle private land claims in the state of California", Isabel Yorba on February 5, 1852, presented to said commission her petition for the approval and confirmation to her of her aforesaid grants of the Rancho Guadalasca. The commission held hearings upon her said petition and the proofs offered in support thereof, but finally, and on April 24, 1854, refused to confirm said grants upon the ground of insufficiency in the description; whereupon Isabel Yorba took an appeal from the ruling of the commission to the United States District Court in the manner provided for under the terms of said act; and said court, after full consideration of the proofs offered in support thereof, including the map or maps upon which the petitioner relied for a description of said rancho, reversed the action and order of the commission and adjudged and decreed the claim of the petitioner to the lands embraced in said rancho to be good and valid and that the same should be confirmed to her to the extent of eleven leagues of land within the boundaries called for in the grant of Governor Juan B. Alvarado of the date of April 6, 1837, and described in the map to which said grant refers. An amended decree was filed on March 3, 1857, which does not materially alter the former decree but which, after referring to the grants made by Governors Chico and Alvarado, decrees that "the said

lands have the boundaries shown by the respective grants and maps to which reference is made for a more particular description''. Accompanying these decrees and filed with them in the office of the commission for the settlement of private land claims in California, as giving direction to the future action of said commission, is to be read the opinion of the judge of said District Court, which furnishes some interesting data as to the description of said rancho as the same is shown upon said maps and as a guide to the commission in the issuance of a patent confirming said grants. The court says: ''The map in this so far as my experience goes is remarkably definite and distinct and is accompanied by notes made upon it explaining with great certainty the situation of the tract. The note upon the map states the commencement of the survey was at the Punta de Muju; this point is shown upon the map as being the southern corner of the tract; the southeastern side is described as running along the coast and the mountains which are laid down upon the map, and being in extent three leagues, thus then a point on the coast three leagues from the Punta de Muju forms the second corner.'' In view of the fact that Punta de Muju is a high, perpendicular bluff rising directly from the waters of the sea, and that the ''mountains'' or sierra which extend from it along the shore to where the sandy beach begins partakes of its rugged and perpendicular character, it would seem to be obvious that this intended boundary line between the two described corners, each ''on the coast'', was, in the view of the court, to be a meander line following the seashore from corner to corner. In the later portion of the opinion this is made even more clear, the opinion stating: ''The side which looks to the southeast faces the seashore and mountains and is three leagues in length. This side is also well defined, as it begins at Punta de Muju and runs along the seashore and sierra in a southeasterly direction three leagues.'' The transcript of the record of the District Court embracing the foregoing decrees having been filed in the General Land Office pursuant to the terms of the foregoing act of Congress and no appeal having been taken therefrom, the General Land Office proceeded, through the surveyor-general's office, to have the Guadalasca Rancho surveyed and a proper description, map and

plat made thereof as preliminary to the issuance of a United States patent thereto. A survey thereof was accordingly made by one J. E. Terrell, a deputy surveyor, which survey, with accompanying map and plat, was in due course filed in the General Land Office. Thereafter and on September 1, 1873, a patent was duly issued to Isabel Yorba, purporting to describe and grant to her the Rancho Guadalasca. The description of said rancho corresponds with and in fact exactly copies the description thereof contained in the field-notes of the survey thereof as made by said J. E. Terrell. The map of said rancho which is embraced in said patent is a copy of the map thereof which was drawn in the office of the surveyor-general by some cartographer who prepared the same supposedly from the field-notes of the Terrell survey. Whatever defects and uncertainties may be found to have existed in the Terrell survey, and whatever differences may appear to exist between the field-notes thereof and the map which was prepared and inserted in said patent, supposedly in conformity with the Terrell survey, were not discovered either by the grantee of said patent or by anyone else until some years after the date of said patent and the entry of said grantee into completed ownership and possession of the Guadalasca Rancho pursuant to the issuance unto her of the patent thereto. In the meantime, and both before and after the issuance to her of said patent Isabel Yorba had been making conveyances of undivided portions of said rancho to various grantees, with the effect that in the year 1874 Wolf Kalisher and Henry Wartemberg, who were grantees mediately from Isabel Yorba of a certain portion of said rancho, commenced an action in partition against a number of other grantees of undivided portions thereof in the then District Court of the First Judicial District of the State of California. In said action commissioners were appointed to make such partition and John T. Stow was selected to make the requisite survey of the rancho. The report of the commissioners introduced in evidence herein sheds an interesting light upon the inadequacies of the Terrell survey. The report states: "The first work that presented itself to the commission in the field was to retrace and establish the boundary lines of the rancho as called for in the official survey made in January, 1861, by J. E. Ter-

rell, United States Deputy Surveyor, but upon endeavoring to do so very grave errors were found to exist in said survey, so much so that it was found impossible to run the lines as called for in the official survey. The official survey called for, however, certain unmistakable landmarks and the commission was governed by these in relocating the lines of the rancho." The commission in its said report proceeded to point out specifically the errors and inaccuracies of the Terrell survey and map, chief among which was that of the course along the shore of the ocean which, if attempted to be followed according to the calls of the survey, would place the southeasterly boundary of the rancho at least half a mile out in the ocean and would continue the same for practically the entire distance between the points Q3 and Q4 as designated upon the field-notes and plat of said survey. The report of the commission, however, adopted the location of Q4 as shown both by the field-notes and plat of the Terrell survey as having been originally established "on the top of ridge near the shore of the Pacific Ocean", and adopted as the southeasterly boundary of the rancho between points Q3 and Q4 a meander line following the shore between said points. The report of this commission was carried into the decree of the court fixing the ocean shore as forming the southeasterly boundary of the rancho for the purpose of said partition suit. The discovery of the errors and discrepancies in the Terrell survey and of the fact that these had been carried into the patent of the rancho had the effect of disclosing that apparently there existed along the southeasterly boundary thereof a strip of land of varying width lying between a straight line drawn between points Q3 and Q4, as shown upon said plat, and the ocean shore, and hence not included within the boundaries of the rancho. The result was that various persons began occupying portions of this outlying strip of land and insisting that the federal government should undertake another survey of that portion of said rancho with a view to opening to settlement and acquisition this alleged strip of public land. As a result of this agitation the federal government designated one J. R. Glover, a deputy United States surveyor, to make a resurvey of the Guadalasca Rancho in the year 1896. In carrying out this commission Glover claimed to have rediscovered the lost

monument Q4 as set in the course of the Terrell survey and to have replaced the same, but this monument, instead of being "close to the seashore", as described in the field-notes of Terrell, was located by Glover as being situate about 1400 feet distant from the then shore line, which discrepancy he explained by his surmise that the shore line had been changed by accretion since the making of the Terrell survey. However, Glover, in making and reporting his survey, with its accompanying plat, stated and showed upon the latter that he regarded the ocean to be the true boundary of the rancho, and hence extended the eastern line thereof from his said station at Q4 to the seashore, thus making the boundary as between Q4 and Q3 practically a meander line along the sierra and shore. In the year 1910, at the instance of the defendant, or his predecessors in interest occupying the two strips of land claimed to lie outside of the established boundaries of the Guadalasca Rancho, the United States government deputed a deputy surveyor named Lightwood to make surveys of these disputed strips of land. In so doing Lightwood accepted the location of station Q4 as claimed to have been remade by Glover, and, based thereon, returned to the United States General Land Office a plat and survey approved by the surveyor-general; whereupon and in the following year the lands embraced therein were opened to settlement and purchase as government lands; and thereafter and in about the year 1914 patents thereto were issued to the predecessors of the defendant herein. In the meantime William Richard Broome having acquired by mesne conveyances the title of the original grantee, Isabel Yorba, to a large tract of the lands of said rancho, constituting the easterly portion thereof, and thereafter having died and his estate having been duly probated, and having by decrees of the Superior Court in and for the County of Ventura been duly distributed in undivided portions thereof as to said real estate unto his widow and heirs, the plaintiff herein, as one of said heirs, in the year 1914 commenced an action in partition of said lands then known as the "Broome Estate Ranch". In the course of said action referees were duly appointed by the said court to make or cause to be made a survey of said last-named premises and to partition the same among the persons entitled thereto in severalty, as a result of which

the plaintiff herein, either by virtue of the decree of partition therein entered or of conveyances from his co-owners, became and at the time of the institution of the present action was and still is the owner of all or a major portion of said Broome Estate Ranch property and of all such portions thereof as are legally embraced within the boundaries of the Guadalasca Rancho. Thereafter and in the year 1925 the present action was begun. The defendant, upon being duly served with process, appeared and demurred to the amended complaint of the plaintiff herein upon several grounds, but chiefly upon the ground that a sufficient cause of action was not therein stated. This demurrer being overruled the defendant answered, denying the averments of the plaintiff's amended complaint, pleading the statute of limitations and also setting forth affirmatively his own claim of title to the lands in dispute. The cause proceeded to trial upon the issues as thus framed, whereupon the trial court, basing its action in so doing upon the theory that the original description and boundaries of the Guadalasca Rancho were so far indefinite as to the location of the southeasterly line thereof with relation to the ocean as to permit the introduction of extraneous evidence for the purpose of establishing said southeasterly boundary line, admitted at the plaintiff's instance and over the defendant's objection a large amount of such evidence, consisting in the main of the several surveys and maps of the Guadalasca Rancho which had from time to time been made and which are above adverted to, and also in the admission of testimony on the part of several surveyors who had upon various occasions made investigations, comparisons and surveys with respect to the rightful location of said boundary line. Upon the conclusion of the plaintiff's case the defendant moved for a nonsuit, basing his contention that the said motion should be granted upon the points urged upon his demurrer and upon the many objections which he had urged against the admission of the foregoing evidence offered upon the plaintiff's behalf. The trial court overruled said motion. The defendant then proceeded to offer his evidence in support of his affirmative pleadings, and thereafter and upon the final submission of the cause the trial court filed its findings of fact and conclusions of law, wherein it found and decided that as to the lands in dis-

pute lying along the southeasterly line of said rancho upon the ocean side the plaintiff was the owner thereof and was entitled to have his title quieted thereto, but that as to the lands in dispute lying along the easterly side of said rancho the defendant was the owner thereof and was entitled to have his title quieted thereto as against the asserted claims of said plaintiff. Judgment was entered accordingly. Each of the parties have appealed from that portion of the judgment which is in favor of the other. The plaintiff, however, has set forth in his briefs upon appeal that if the determination of this court shall upon the defendant's appeal be in the plaintiff and respondent's favor, affirming the judgment as to the portions thereof so appealed from, he will waive the further prosecution of the appeal taken on his own behalf and consent to an affirmance of that portion of said judgment from which he has appealed. We shall at present only consider the defendant's appeal.

The defendant's first contention upon his said appeal is that the trial court was in error in overruling his demurrer to the plaintiff's amended complaint upon the ground that a cause of action was not therein set forth. The basis of this contention is that since the plaintiff's alleged title to the portion of the Guadalasca Rancho owned by him is founded upon the patent to said rancho, and not otherwise, and since that description and boundaries of said rancho as set forth in said patent are not ambiguous or uncertain, but, on the contrary, clearly show that the lands to which the plaintiff is by this action asserting title are outside of said boundaries, he has for that reason failed to state a cause of action. The vice of the defendant's contention in the foregoing regard is that it disregards the very fact in dispute in this action, viz., the uncertainty and ambiguity of the patent boundaries and description, based, as they are, upon the Terrell survey. His demurrer was, therefore, properly overruled, and for the same reason his motion for nonsuit was properly denied.

The next contention of the defendant is that the trial court was in error in admitting the main portion of the plaintiff's evidence offered for the purpose of explaining the alleged inaccuracies and ambiguities in the patent description and plat with respect to the location of the aforesaid southeasterly boundary of said rancho. It

is undoubtedly true, and supported by abundant authority, that when the description of a granted tract of land embraced within the terms of a United States patent is, upon the face thereof, clear and unambiguous, such description constitutes the final word, and in such case evidence will not be admissible to show that the grantor intended to do other than that thus clearly set forth upon the face of said grant. (*Rose* v. *Davis,* 11 Cal. 133; *Moore* v. *Wilkinson,* 13 Cal. 478; *Chapman* v. *Polack,* 70 Cal. 487 [11 Pac. 764]; *Heinlen* v. *Heilbron,* 97 Cal. 105 [31 Pac. 838]; *Los Angeles F. & M. Co.* v. *Thompson,* 117 Cal. 594 [49 Pac. 714]; *Harvey* v. *Barker,* 126 Cal. 262 [58 Pac. 692]; *Weaver* v. *Howatt,* 171 Cal. 302 [152 Pac. 925]; *Knight* v. *United Land Assn.,* 142 U. S. 161 [35 L. Ed. 974, 12 Sup. Ct. Rep. 258]; *De Guyer* v. *Banning,* 167 U. S. 723 [42 L. Ed. 340, 17 Sup. Ct. Rep. 937]; *Southern Pac. R. Co.* v. *United States,* 200 U. S. 354 [50 L. Ed. 512, 26 Sup. Ct. Rep. 298].) But the foregoing authorities have no application to a case wherein it sufficiently appears upon the face of the description embraced in the terms of the patent itself or of the plat which accompanies and is made a part of the same that the same is in certain vital respects uncertain. In such a case the authorities hold that extrinsic evidence is admissible to explain away the uncertainties of the grant and to prove the real intent of the grantor in making the same, provided such evidence does not go to the extent of changing the clear intent of the grant as to the premises to be conveyed. This rule was well set forth in the case of *Miller* v. *Grunsky,* 141 Cal. 441, 452 [66 Pac. 858, 75 Pac. 48, 50], wherein this court said: ''A patent is no doubt conclusive between the parties and their privies against any collateral attack, but before it concludes anything it must be construed and its meaning determined, and when it contains conflicting calls they are to be reconciled upon the same principles and upon the same rules that govern the construction of other deeds of conveyance.'' We think this is such a case. We have hereinbefore pointed out some of the inaccuracies and defects in the Terrell survey which were carried into the description embraced in the grant itself. We might add, incidentally, that Deputy United States Surveyor Terrell made many surveys of California land grants and that the re-

action of the courts thereon has been that the Terrell surveys were quite generally found to be wrong. (See *Adair* v. *Wright,* 85 Cal. 313 [24 Pac. 663].) We might further suggest that the plat which accompanies the patent and which was not prepared by Terrell varies in an important particular from the calls of the field-notes of Terrell; as, for example, the Terrell field-notes establish the two points at each end of the southeasterly line of the rancho as being upon or very near the immediate coast line of the ocean. The natural and proper inference to be drawn therefrom would be that a meander line along the ocean shore would connect these two coast line corners. In the case of *City of Los Angeles* v. *San Pedro, L. A. & S. L. R. Co.,* 182 Cal. 652, 654 [189 Pac. 449], this court laid down the rule of law governing such a situation to be as follows: ''It may be considered a canon in American jurisprudence that where the calls in a conveyance of land are for two corners at, in or on a stream or its bank, and there is an immediate line extending from one such corner to the other, the stream is the boundary, unless there is something which excludes the operation of this rule by showing that the intention of the parties was otherwise.'' Yet upon turning to the plat which accompanies the patent we discover that the cartographer thereof has disregarded this rule and has drawn a straight line between these two shore-wise points, thus carrying the southeasterly boundary of the grant, throughout the larger portion thereof, many hundred feet inland from its natural shore line, thus making it to appear that the government in making this grant was not only disregarding the plain mandate of the District Court as to what was to constitute the southwestern and shore line boundary of the rancho, but was also thereby excluding from the terms of the grant a rugged and barren and apparently worthless (as land was then regarded) triangular strip of land without the slightest conceivable reason why it should have done so. There is another significant fact in this connection, which is, that Surveyor Terrell, after completing his survey, figured the area of the rancho to be 30,593.85 acres and that the patent accordingly calls for that area. The inclusion of the strip of land along the ocean side for which the plaintiff is herein contending gives an area to the rancho, according to the Stow survey, of 30,597.40 acres,

or within about four acres of the Terrell calculation, while the exclusion of this strip of land, comprising 233.89 acres, would reduce the acreage of the rancho to that extent, and which in itself constitutes a material variation between the patent as the defendant contends it should be construed and the acreage stated in the patent as the area of the confirmed grant. In considering the foregoing obvious discrepancies appearing upon the face of the patent and its accompanying plat the trial court concluded that it might properly be given access to the terms and maps of the original Mexican grant, to the decision of the United States District Court in directing a confirmation of said grant, to such other and later surveys of the rancho by surveyors seeking, somewhat vainly, to follow in the footsteps of Surveyor Terrell, and particularly to the testimony of C. W. Petit, who for many years had been the county surveyor of Ventura County, and was as such very familiar with the topography of the precise region involved in this litigation, and who not only went over the ground traversed by Terrell in making his survey, but undertook to prepare a map illustrative of the situation on the ground. The court, as we have seen, admitted these various forms of evidence, and also admitted much testimony offered by the defendant in controverting the same; and upon the conclusion and submission of the cause decided that the proper interpretation to be placed upon the patent of the Guadalasca Rancho as to its designation of the southeasterly boundary thereof was that such boundary consisted of a meander line along the ocean side, and as a consequence the lands involved in the defendant's appeal herein were at all times embraced within the area of the Guadalasca Rancho. Without undertaking to go over the numerous points in detail wherein the defendant and appellant assails said conclusion, and which are mainly covered by the points hereinabove considered, we are satisfied that these are without sufficient merit to justify a reversal of the case. We also do not deem the points made upon defendant's motion for a new trial worthy of detailed review.

There is but one remaining point involved in the defendant's appeal, viz., that of the statute of limitations. It will be sufficient to state that whatever evidence was offered upon the subject of any adverse possession on the

part of the defendant or his predecessors of the strip of land lying along the southeasterly boundary line of said rancho was quite conflicting, the claim of the plaintiff being that he and his predecessors in interest back to the original making of the Mexican grant had always been in the actual possession of said strip of land. The trial court found in the plaintiff's favor upon this issue and we shall not disturb its said finding thereon upon this appeal. Neither shall we disturb, for the same reason, the finding of the trial court upon the plea of an estoppel on the part of plaintiff to maintain this action.

In view of the foregoing considerations and of the plaintiff's concession that in the event the judgment of the trial court is affirmed as to the defendant's appeal it may also be affirmed upon the plaintiff's appeal, it follows that the said judgment must be and the same is hereby affirmed upon both appeals, each of the parties to pay his own costs.

Shenk, J., Seawell, J., Preston, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.