[No. C054808. Third Dist. Aug. 12, 2008.]

ALAN W. CLAUDINO, Plaintiff and Respondent, v.
PATRICIA ANN PEREIRA, Individually and as Trustee, etc., Defendant and
Appellant.

## COUNSEL

Kroloff, Belcher, Smart, Perry & Christopherson and Kathleen M. Abdallah for Defendant and Appellant.

Law Offices of Kenneth M. Foley and Kenneth M. Foley for Plaintiff and Respondent.

## OPINION

**BUTZ, J.**—This is an appeal in an action to quiet title arising out of a boundary line dispute. Defendant Patricia Ann Pereira, individually and as trustee of the Patricia Pereira Family Trust (hereafter Pereira), is one of the two adjoining landowners. Pereira appeals contending the trial court erred in determining that the disputed boundary follows the line of a gulch rather than a straight line as depicted on the townsite plat prepared pursuant to Statutes 1867–1868, chapter 523, page 692. She argues that the trial court was required to adhere to the plat depiction and erred (1) in using the original surveyor's field notes pertaining to the parcels as a basis for its finding and (2) in admitting extrinsic evidence to resolve a claim of ambiguity in those field notes. Finding no merit in her contentions, we shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 1867, Congress enacted a statute authorizing the judge of the county court to claim, in trust for the benefit of the occupants, federal public lands settled and occupied as an unincorporated townsite. (Act of Mar. 2, 1867, ch. 177, 14 Stat. 541.) The next year California enacted implementing legislation, authorizing county judges to survey lands, which inhabitants of any unincorporated town were entitled to claim under the federal act.[1] The lots or parcels claimed by any person were to be designated on a plat. "These plats shall be considered public records, shall each be accompanied with a copy of the field notes, and the County Recorder shall make a record thereof in a book to be kept by him for that purpose." (Stats. 1867–1868, ch. 523, § 3,

---

[1] We will refer to these enactments collectively as the Townsite Acts.

pp. 693–694.) The surveyor was to number the blocks divided by roads and number the lots therein consecutively. (*Id.* at p. 694.) The lot numbers would then provide a sufficient legal description of parcels in the plat "and such plats, field notes and records, and certified copies thereof, shall be prima facie evidence of the contents and correctness thereof . . . ." (*Ibid.*)

In 1870, Henry F. Terry surveyed the townsite of Campo Seco in Calaveras County pursuant to these laws. In block 8, lot 2, occupied by C.B. Hopkins, is listed as having improvements including a fence, house and barn. Lot 1, with no occupant listed, has no improvements listed. The common boundary between lots 1 and 2 is depicted on the plat as a straight line. However, the field notes for lot 2 describe the common boundary as commencing at the northwest corner, "in the gulch," and thence "northwesterly, down said gulch" to the next corner, a point that is also "in the gulch."[2] The field notes for lot 1 describing the same boundary vary only in omitting the phrase "down said gulch."

Plaintiff Alan W. Claudino is the owner of a portion of lot 1 and defendant Pereira is the owner of a portion of lot 2. In July 2005, Claudino sued for quiet title as to the boundary between the adjoining parcels. Following a bench trial in May 2006, the trial court determined that the "common boundary between the properties of [Claudino and Pereira] is that line going through the thread of the gulch referred to in the Townsite Field Notes . . . ."

Roger Pitto, a licensed land surveyor with long experience in Calaveras County townsite surveys, testified for Claudino at trial. Pitto opined that the field notes' reference to "down said gulch" is "a precise call to a natural monument. And when you go down a gulch you go down a road or, or other things or a stream which is a natural monument when it calls to [go] down a gulch for example, it means that thread or center of the gulch."

Pitto opined that discrepancies between townsite plat depictions and field notes should be resolved in favor of the field notes. He noted that what was being surveyed under the Townsite Acts was the lines of actual possession which are memorialized in the field notes. Other boundaries of lot 2 followed rock wall fences consistent with lines of possession. In the gulch, immediately parallel to the center, except at the lower end where the gulch fades out, there is a rock wall. No evidence of any old wall or fence follows the straight line boundary depicted on the plat. Pitto opined that the rock wall was in the gulch at the time of the original survey, was the line of actual occupation, and the field notes called for "down said gulch" because it was closely parallel to the line of occupation and "saved [Terry] from surveying many, many courses."

---

[2] The field notes for lot 1 also refer to the corresponding boundary corners in the center of the gulch. However, the line between is simply described as northwesterly to the initial point.

Judith Marvin, a historian, also testified for Claudino. One of the indicia of historic boundaries in Campo Seco is stone walls; another is early assessment records. She observed the rock walls on lot 2 and opined that they were the historic boundaries. The rock wall in the gulch appears consistent with the 1850–1860's enclosure of the property. She found an 1860 assessment record for part of what is now lot 2, which describes it as bounded on the disputed boundary by the gulch.

Pereira testified that she believed the rock wall in the gulch was built as a barrier to prevent water from coming onto lot 2.

Michael Jones, an experienced land surveyor, testified for Pereira. He did not agree that the field notes' reference to "down said gulch" should be interpreted as a natural monument. "[The gulch] certainly could be a natural boundary. But all the documents, the deeds and so forth refer to the map not to the notes. There is nothing in the map that calls for the notes. And this is what—someone if they were going to go out and buy the property, they would see the map and say, 'Yes, that is my property.' This is a straight line and that is what I own. [¶] So usually you defer to the map before you go back to the notes." Jones interpreted "down said gulch" as a directional call rather than as a physical monument. Jones said the rock wall on the south border of lot 2 "differs considerably from the rock wall [in the gulch]. Along here it really isn't a wall; [it's] a retaining wall for like almost rip-wrap [sic] down in the gulch. You walk on top of it and then [it] just drops off."

## DISCUSSION

Pereira contends that the trial court erred in accepting the testimony of Claudino's witnesses to vary the boundary from the straight line on the plat. She argues the plat is inviolate. As appears, the legal description of the parcels includes the plat and the field notes for both parcels. That aggregate description is ambiguous and the trial court did not err in admitting and using extrinsic evidence to resolve the ambiguity in favor of Claudino.

Pereira first suggests that the evidence of the original occupancy is irrelevant because the plat is controlling even if the 1870 survey was mistaken about the extent of the original occupancy. She relies upon the following passage in *Verdi Dev. Co. v. Dono-Han Mining Co.* (1956) 141 Cal.App.2d 149 [296 P.2d 429] (*Verdi Development*): "If the quarter corner accepted by Messrs. Gentry and Browne, the surveying experts of defendants, was in fact the original quarter corner as fixed by the official Government Survey, it would have to be accepted under the law. The original government surveys, whether they are mathematically correct or grossly erroneous, control the location and length of boundaries of sections and parts thereof and

the shape and size of tracts granted to patentees. [¶] ' "A survey of public lands does not *ascertain* boundaries; it *creates* them. [Citations.]" [Citations.]' [¶] 'A section of a township is that which is laid out on the ground, and a patentee takes only such land as is included within the survey of the plot conveyed and he cannot later question the survey as erroneous, although in fact the line in question should have been placed elsewhere.' (*Phelps* v. *Pacific Gas & Elec. Co.* [(1948)] 84 Cal.App.2d 243, 247 [190 P.2d 209].) [¶] What is said in *Harrington* v. *Boehmer* [(1901)] 134 Cal. 196, 199 [66 P. 214], with respect to township lines is equally applicable to the lines of sections, and parts of sections: [¶] 'The question in all cases similar to this is, Where were the lines run in the field by the government surveyor? A government township lies just where the government surveyor lines it out on the face of the earth. These lines are to be determined by the monuments in the field.' " (*Verdi Development*, at pp. 152–153.)

In *Verdi Development* the issue was whether the physical monument, established by the original surveyor, for the township corner could be overridden by the mathematical determination of where the corner monument ought to have been placed. The holding is that the physical monument, even if it should have been placed elsewhere, is controlling. (*Verdi Development, supra*, 141 Cal.App.2d at p. 152.) That holding has no bearing on the issue in this case.

*Verdi Development* and most other cases address a survey under the township and range system for describing land later to be conveyed from the government to private owners. (See, e.g., *Pleasant Valley Canal Co. v. Borror* (1998) 61 Cal.App.4th 742, 755, fn. 7 [72 Cal.Rptr.2d 1].) Thus, it is correctly noted in such cases that: "A survey of public lands does not ascertain boundaries; it creates them." (*Cox v. Hart* (1922) 260 U.S. 427, 436 [67 L.Ed. 332, 337, 43 S.Ct. 154], citing *Robinson v. Forrest* (1865) 29 Cal. 317, 325 and *Sawyer v. Gray* (1913) 205 F. 160, 163.) The township and range system is a different system than the one in issue. Here the land was surveyed under the Townsite Acts. The land here *was* surveyed to ascertain boundaries. The survey was to describe the land, as already occupied, so that title could be confirmed to the occupants.

■ The issue in this case was the meaning of the documents describing that survey as to the lots in issue. The plat showed the boundary as a straight line. However, the Townsite Acts do not provide that the plat is evidence of the parcel of land, rather "such plats, field notes and records, and certified copies thereof, shall be prima facie evidence of the contents and correctness thereof . . . ." (Stats. 1867–1868, ch. 523, § 3, pp. 693–694.) The plat is not inviolate; where there is a conflict, the field notes are the superior authority. (E.g., *Harrington v. Boehmer, supra*, 134 Cal. at pp. 198–199.) Surely, if the

field notes in this case said explicitly that the boundary followed the centerline of the gulch, the fact that the plat showed a straight line would not be controlling.

██ Pereira quotes this passage from *Broome v. Lantz* (1930) 211 Cal. 142 [294 P. 709]: "It is undoubtedly true, and supported by abundant authority, that when the description of a granted tract of land embraced within the terms of a United States patent is, upon the face thereof, clear and unambiguous, such description constitutes the final word, and in such case evidence will not be admissible to show that the grantor intended to do other than that thus clearly set forth upon the face of said grant. [Citations.]" (*Id.* at pp. 150–151.) However, she fails to attend to the rest of the paragraph: "But the foregoing authorities have no application to a case wherein it sufficiently appears upon the face of the description embraced in the terms of the patent itself or of the plat which accompanies and is made a part of the same that the same is in certain vital respects uncertain. In such a case the authorities hold that extrinsic evidence is admissible to explain away the uncertainties of the grant and to prove the real intent of the grantor in making the same, provided such evidence does not go to the extent of changing the clear intent of the grant as to the premises to be conveyed." (*Id.* at p. 151.)

Pereira argues that there is no ambiguity because there is no discrepancy between the field notes and the plat. She submits that "down said gulch" is a directional call because that is confirmed by the plat map. This argument begs the question. Even her surveyor witness conceded that the phrase could be a reference to the gulch as a natural monument.

Pereira also attempts to evade the doctrine that ambiguity permits extrinsic evidence by asserting that no one testified that there is an ambiguity. The term is not a talisman. The question is whether there was an ambiguity, not whether a witness testified using that term. Here the field notes are ambiguous. "[D]own said gulch" could be a reference to a natural monument or a directional call. The trial court could properly admit evidence of the facts on the ground and expert opinion on surveying practice to resolve the ambiguity.

Pereira complains that the trial court erred in its remarks referring to the intent of the original surveyor, Henry F. Terry. She cites *White v. State of California* (1971) 21 Cal.App.3d 738, 750–751 [99 Cal.Rptr. 58] for the assertion that the intention of the surveyor "has limited value." *White* is inapposite. The intention of the surveyor in *White* was discounted because the issue was what land did the state intend to convey. (*Ibid.*) The statutes in that case required express language to convey tidelands and there was none.

In this case the intention of Terry, as drafter of the field notes, concerning his use of the language "down said gulch" was very much in issue. He was charged with describing the land that was occupied, and facts bearing on the occupation of the land were relevant to ascertaining that usage.

■ Pereira argues that Claudino's view is untenable because there is no discrepancy between the field notes for Claudino's lot and the straight line depicted on the plat. The field notes for lot 1 provide less support for a claim of ambiguity about the status of the gulch as a natural monument. We need not decide in this case whether, if the field notes for both lots agreed using the terms of the lot 1 notes, Claudino would be able to pursue a claim of ambiguity. The correct legal description for both lots requires an examination of the field notes for both lots as to the common boundary. It is a basic canon of construction that two parts of the same basic document should be read as a whole to reconcile ostensible inconsistencies. (Cf., e.g., Civ. Code, § 1652.)

Pereira also argues that she should have prevailed because the legal description in her grant deed is to "Lot 2 in Block No. 8, according to the Official Map or Plat of said Townsite of Campo Seco . . . ." She submits that as the plat shows a straight line this must be her boundary. However, the reference to the plat is not an adequate legal description under the Townsite Acts unless it is read as a reference to "such plats, field notes and records." (Stats. 1867–1868, ch. 523, § 3, pp. 693–694.) More importantly, Pereira's predecessors in interest could not lawfully convey to her more property than they owned, i.e., more than was described in the survey as that originally occupied by C.B. Hopkins.

Finally, Pereira suggests that evidence that Hopkins occupied to the rock wall is inconsistent with a survey of his holding which describes it as at the centerline of the gulch. It is true that the wall, while close to the centerline of the gulch for much of its extent does not sit on the centerline. However, building a wall in the center of a gulch, inferably an episodic seasonal watercourse, would be impractical. Terry could reasonably conclude and may have been informed that the wall indicated an intent to occupy to the adjacent and, for the most part, closely parallel course of the natural monument. The trial court could reasonably infer that that was the reason for his usage of "down said gulch."

■ For all the foregoing reasons, we conclude that Pereira fails to show that the trial court erred in determining the disputed boundary.

## DISPOSITION

The judgment is affirmed. Claudino shall recover his costs of this appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Blease, Acting P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 2008, S166817.